**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>ATLRE INVESTMENT PARTNERS, LLC<br><br>Debtor. | CASE NO. 26-61667-JWJ<br>CHAPTER 11 |
| APEX DEBT FUND I, LP<br><br>Movant,<br><br>v.<br><br>ATLRE INVESTMENT PARTNERS, LLC<br><br>Respondent. | CONTESTED MATTER |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

APEX DEBT FUND I, LP, creditor in the above-styled bankruptcy case, by and through the undersigned counsel, files this *Motion for Relief from the Automatic Stay* (this "Motion") under 11 U.S.C. §§ 362(d)(1) and (d)(2), respectfully showing the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

APEX DEBT FUND I, LP ("Movant"), a Delaware limited partnership, is a private lending vehicle managed by Apex Fund Group, LLC.

2.

ATLRE INVESTMENT PARTNERS, LLC ("Debtor") is a Georgia limited liability company in the business of real estate investment with its principal office at 227 Sandy Springs Place, D485, Atlanta, GA 30328.

3.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

**BACKGROUND**

The Loans and the Properties.

4.

On or around June 28, 2024, Movant and Debtor executed that certain *Promissory Note* for $210,000.00 (the "Madison Note") secured by that property generally known as 285 Madison Road, Monticello, GA 31064 (the "Madison Property"). The Madison Note and related security deed (the "Madison Deed") are attached hereto as Exhibit A.

5.

On or around September 24, 2024, Movant and Debtor executed that certain *Balloon Promissory Note* for $235,000.00 (the "Abbotts Note") secured by that property generally known as 2620 Abbotts Glen Drive NW, Acworth, GA 30101 (the "Abbotts Property"). The Abbotts Note and related security deed (the "Abbotts Deed") are attached hereto as Exhibit B.

6.

On or around December 20, 2024, Movant and Debtor executed that certain *Balloon Promissory Note* for $285,000.00 (the "Tamarack Note") secured by that property generally known as 800 Tamarack Rd., Monticello, GA 31064 (the "Tamarack Property"). The Tamarack Note and related security deed (the "Tamarack Deed") are attached hereto as Exhibit C.

7.

On or around June 13, 2025, Movant and Debtor executed that certain *Balloon Promissory Note* for $175,000.00 (the "Hwy 83 Note," together with the Madison, Abbotts, and Tamarack Note, the "Notes") secured by that property generally known as 11017 Hwy 83 S., Monticello, GA 31064 (the "Hwy 83 Property," together with the Madison, Abbotts, and Tamarack Property, the "Properties"). The Hwy 83 Note and related security deed (the "Hwy 83 Deed") are attached hereto as Exhibit D.[1,2]

8.

The Abbotts, Tamarack, and Hwy 83 Deeds each secure not only the relevant notes against the Abbotts, Tamarack, and Hwy 83 Properties (together, the "Cross-Collateralized Properties"), but all other indebtedness of Debtor to Movant.

9.

The Abbotts Deed secures the Abbotts Note "together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to grantee, however incurred…." [Exhibit B, pg. 4].

---

[1] The Hwy 83 Deed names "Apex Fund Group," Movant's manager, as grantee. Movant is the Lender under the Hwy 83 Note [Exhibit D, pg. 12], and Apex Fund Group held the Hwy 83 Deed for Movant's benefit. Apex Fund Group assigned all of its right, title, and interest in the Hwy 83 Deed to Movant by Assignment and Transfer of Security Deed dated November 10, 2026 [Exhibit D-1], which Movant will record upon entry of an order granting relief from stay or dismissing this case. *See In re Corley*, 447 B.R. 375 (Bankr. S.D. Ga. 2011). Movant requests that the Court confirm that the stay does not apply to the recording or, alternatively, grant relief to permit said recording.

[2] As recorded, the Hwy 83 Deed's legal description encompasses Tract A shown on the plat recorded at Plat Book 10, Page 74 (Tax Parcel 039B 048), but omits Tract B (Tax Parcel 039B 047), which Debtor acquired by the deed recorded immediately before the Hwy 83 Deed (Deed Book 1248, Page 229) and which bears the address stated in the Hwy 83 Deed's 1-4 Family Rider. Debtor's own schedules identify 11017 Highway 83 as property subject to Movant's lien. [Doc. No. 1, pg. 13]. Movant contends the omission is a scrivener's error and reserves all rights to reform the Hwy 83 Deed. The relief requested in this Motion does not depend on that issue.

10.

The Tamarack Deed secures "[a]ll present and future debts from ATLRE Investment Partners, LLC to LENDER, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt." [Exhibit C, pg. 3].

11.

The Hwy 83 Deed provides the same, "together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to grantee, however incurred …." [Exhibit D, pg. 2].

12.

The Abbotts, Tamarack, and Hwy 83 Notes provide further for cross-default and cross-collateralization. [Exhibits B, pg. 2; C, pg. 18; D, pg. 13].

13.

The Cross-Collateralized Properties therefore secure all of Movant's claims.

14.

The Madison Deed secures the Madison Note, and its default provisions cross-default to Debtor's other obligations to Movant.

15.

Each of the Deeds obligates Debtor to pay all taxes on the Property when due and to keep the same insured with loss payable to Movant. [Exhibits A, pg. 3; B, pgs. 4-5; C, pgs. 4, 18; D, pg. 2].

16.

Debtor's failure to perform these covenants is an independent default under the Deeds.

17.

Debtor has breached both covenants. [Exhibit F; Doc. No. 1, pg. 10].

18.

Debtor defaulted on the Notes when it failed to pay the same when due.

19.

Following Debtor's default and failure to cure the same, Movant duly advertised the Properties for foreclosure sales to be held on Tuesday, September 1, 2026. Attached hereto as Exhibit E are the notices of intent to foreclose and sale.

The Petition and Movant's Claims.

20.

On August 31, 2026, the day before the scheduled foreclosure sales, Debtor filed its voluntary petition under Chapter 11 (the "Petition Date").

21.

Movant timely filed proofs of claim relating to the Notes totaling $1,604,549.06 [Claim Nos. 1-3, 2-3, 3-2 and 4-2].

Debtor's Schedules and Statement of Financial Affairs (SOFA).

22.

Debtor's schedules and SOFA establish the following:

- **Assets**. Debtor's only assets are the Properties, scheduled at a combined $1,445,000.00 and $60 in cash. [Doc. No. 1, pgs. 7, 8-10]. Debtor lists no accounts receivable, no inventory, no office furniture, fixtures, or equipment, no machinery or vehicles, and no other assets, including no insurance policies. [Doc. No. 1, pgs. 8–11].
- **No revenue.** Debtor reports no gross revenue from business and no non-business revenue. [Doc. No. 1, pg. 18].
- **No books or records.** Debtor lists no accountants or bookkeepers who maintained its books and records, no one who audited or prepared its financial statements, and no one in possession of its books and records. [Doc. No. 1, pg. 22].

- **Insider occupancy.** Debtor's sole member, Mr. Don Budd, lists his address as the Tamarack Property. [Doc. No. 1, pgs. 23, 25].
- **Creditors.** Apart from Movant, Debtor lists only $18,227.88 in nonpriority unsecured trade and credit card debt owed to two creditors, Home Depot Pro and Synchrony Bank. Debtor lists no priority claims. [Doc. No. 1, pgs. 7, 14-15].

23.

Debtor scheduled Movant's claims at $885,000.00, an amount that approximates the original principal of the loans and omits all accrued contract interest, default interest, and charges. Comparing Debtor's own values to Movant's proofs of claim:

| Property | Debtor's Value | Claim per Debtor's Schedule D | POC | Movant's Value[3] |
|---|---|---|---|---|
| Madison | $450,000.00 | $210,000.00 | $413,165.65 | $419,000.00 |
| Tamarack | $550,000.00 | $285,000.00 | $489,614.08 | $398,400.00 |
| Hwy 83 | $25,000.00 | $175,000.00 | $264,645.41 | $30,800.00 |
| Abbotts | $420,000.00 | $215,000.00 | $437,123.92 | $414,940.00 |
| **Total** | **$1,445,000.00** | **$885,000.00** | **$1,604,549.06** | **$1,263,140.00** |

24.

Debtor scheduled the Cross-Collateralized Properties at a combined $995,000.00, roughly $196,400.00 less than Movant's claims on the same ($1,191,383.41), before accounting for any unpaid taxes that prime Movant's liens, and far less than roughly $1.6M the Cross-Collateralized Properties secure under their relevant all-indebtedness provisions. On Movant's valuations ($844,140.00), the shortfall on the Cross-Collateralized Properties, alone, is approximately $347,200.00.[4]

[3] Save for the Madison Property, which value reflects its current asking price, Movant's values for the remaining properties reflect their 2026 fair market value as assessed by the Jasper and Cobb County tax assessors.

[4] Movant's claims include attorney's fees under O.C.G.A. § 13-1-11 totaling $139,208.01. Excluding those fees, the claims on the Cross-Collateralized Properties total $1,088,336.35, which still exceeds Debtor's scheduled value for the same by roughly $93,300.00, and Movant's value by roughly $244,200.00.

25.

As to the Madison Property, Movant values the same at $419,000.00 against a claim of $413,165.65. Two months before the Petition Date, Debtor's principal offered the property for $379,000.00, or $34,165.65 less than Movant's claim.[5] At $419,000.00, a 6% sales commission alone ($25,140.00) would reduce net proceeds to $393,860.00, or $19,305.65 less than Movant's claim. Even crediting Debtor's scheduled value of $450,000.00, any equity would be approximately $36,800.00, a cushion of approximately 8% before costs of sale.

<u>Unpaid Taxes</u>.

26.

Debtor did not pay 2025 ad valorem taxes on the Tamarack, Hwy 83, and Abbotts Properties, which remain delinquent. The 2026 taxes on the Abbotts Property became delinquent on October 15, 2026, and the 2026 taxes on the remaining Properties come due on December 20, 2026.[6] Attached hereto as Exhibit F are copies of the tax records.

| **Property** | **2025** | **2026** | **Total** |
|---|---|---|---|
| Madison | $0 | $166.04 | $166.04 |
| Tamarack | $4,496.78 | $3,834.21 | $8,330.99 |
| Hwy 83 | $371.35 | $303.80 | $675.15 |
| Abbotts | $4,941.81 | $5,293.56 | $10,235.37 |
| **Total** | **$9,809.94** | **$9,597.61** | **$19,407.55** |

27.

None of the above taxes appear on Debtor's schedules.

[5] Debtor has marketed the Madison Property, without success, since October 2024. It was listed at $479,900.00 on October 31, 2024, reduced to as low as $419,900.00, and withdrawn unsold after 187 days on market on October 14, 2025. It was relisted at $439,900.00 on February 12, 2026, reduced to as low as $379,000.00 on June 26, 2026, and withdrawn unsold after 140 days on July 2, 2026. On the Petition Date, it was relisted at $439,000.00 and the price was reduced to $419,000.00 on September 10, 2026. The listing agent is Don Budd of Atlanta Homes & Estates, Debtor's sole member and managing member and the same individual who signed Debtor's schedules valuing the property.

[6] Amounts are as of the date of this Motion and include interest and penalties accrued through November 9, 2026.

## RELIEF REQUESTED

Movant requests entry of an order (a) lifting the automatic stay to allow Movant, and Apex Fund Group, to the extent the latter holds record title to the Hwy 83 Deed, to exercise their rights and remedies under applicable non-bankruptcy law with respect to the Properties; (b) confirming that the automatic stay does not apply to the recording of the Assignment and Transfer of Security Deed attached to this Motion as Exhibit D-1 or, alternatively, to the extent the automatic stay applies, granting Movant relief from the stay to record it; (c) waiving the provisions of Bankruptcy Rule 4001(a)(3); and (d) for such other and further relief as is just and equitable.[7]

## ARGUMENT AND CITATION TO AUTHORITY

### A. Relief is Proper Pursuant to 11 U.S.C. § 362(d)(1) for Cause.

11 U.S.C. § 362(d)(1) provides that, on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay provided under 11 U.S.C. § 362(a) for "cause." The term "cause" is not defined in the Bankruptcy Code, "rather, courts are left to determine in their own discretion what constitutes cause on a case by case basis." *In re Baker*, 2018 WL 4961656, at *5 (Bankr. N.D. Ga. Oct. 12, 2018) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)). Case specific factors that aid courts in evaluating whether cause exists under § 362(d)(1) include "(1) whether the debtor has acted in bad faith; (2) the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code; and (3) pending state court proceedings." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (internal quotations and citations omitted).

---

[7] Movant is contemporaneously filing its Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) and requests that the two motions be heard together.

**A(i).** The Stay Should be Lifted for Bad Faith.

"The filing of a bankruptcy petition in bad faith constitutes 'cause' to lift the stay pursuant to § 362(d)(1)." *Matter of Corbin L Young, LLC*, 2026 WL 366666, at *3 (Bankr. N.D. Ga. Feb. 9, 2026) (citing *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988)); *In re Darlington*, 2009 WL 6498171, at *4 (Bankr. N.D. Ga. Sept. 11, 2009) ("Bankruptcy courts have long recognized that a lack of good faith on the Debtor's part also constitutes 'adequate cause for both terminating the stay … *as well as dismissing the petition outright*.'" (citations omitted). [emphasis added]). Indeed, the court in *Phoenix Piccadilly* explained that "[a]lthough … there is no particular test for determining whether a debtor has filed a petition in bad faith …. the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Phoenix Piccadilly*, 849 F.2d at 1394 (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)).[8]

The court in *Phoenix Piccadilly* found that cause existed where "(i) The Debtor has only one asset; (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors; (iii) The Debtor has few employees; (iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt; (v) The Debtor's financial

[8] For a more extensive list of factors, please see *Matter of Orchard Hills Baptist Church, Inc.*, 608 B.R. 309, 314-15 (Bankr. N.D. Ga. 2019) ("In making this determination, courts have considered the following factors: (1) Whether the debtor has few or no unsecured creditors; (2) Whether there has been a previous bankruptcy petition by the debtor or a related entity; (3) Whether the pre-petition conduct of the debtor has been improper; (4) Whether the petition effectively allows the debtor to evade court orders; (5) Whether there are few debts to non-moving creditors; (6) Whether the petition was filed on the eve of foreclosure; (7) Whether the foreclosed property is the sole or major asset of the debtor; (8) Whether the debtor has no ongoing business or employees; (9) Whether there is no possibility of reorganization; (10) Whether the debtor's income is sufficient to operate; (11) Whether there was no pressure from non-moving creditors; (12) Whether reorganization essentially involves the resolution of a two-party dispute; (13) Whether a corporate debtor was formed and received title to its major assets immediately before the petition; and (14) Whether the debtor filed solely to create the automatic stay.").

problems involve essentially a dispute between the Debtor and the Secured Creditors; and (vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights." *Id*. at 1394-95.

Every *Phoenix Piccadilly* factor and several of the *Orchard Hills* factors are present here. First, Debtor's assets are, in substance, a single pool of Movant's collateral; second, the petition was filed on the eve of foreclosure, solely to obtain the automatic stay; third, this is essentially a two party dispute (Movant holds the largest claim by far ($1,604,549.06 to unsecured claims totaling $18,227.88)); fourth, Debtor has no ongoing business, employees, books or records, or income (as evidenced by Debtor's schedules); fifth, Debtor's only meaningful assets are the Properties and they are encumbered beyond any realizable value; sixth, Debtor has not made any payment on the Notes; seventh, Debtor has no possibility of reorganization (with no income, it cannot fund a plan, make adequate protection payments, or even pay the taxes accruing on the Properties – any plan would require new money that Debtor has not identified); and eighth, Debtor's pre- and post-petition conduct is improper. In breach of its covenants, Debtor has neither paid taxes on nor insured the Properties, and it omitted nearly $10,000.00 in delinquent 2025 taxes from its schedules. It reported no bankruptcy related payments despite counsel's disclosure of $10,000.00 pre-petition retainer. Its sole member, who personally guaranteed all of Debtor's obligations to Movant, lives in the Tamarack Property without paying rent to Debtor.[9] And since the Petition Date, Debtor's principal has continued to market the Madison Property as its listing agent, yet Debtor has sought no authority to employ a broker under 11 U.S.C. § 327.[10]

[9] Debtor reports no revenue. [Doc. No. 1, pg. 18].

[10] Even if it had, it is unlikely that Debtor's principal could qualify as a "disinterested person." 11 U.S.C. §§ 101(14), 327(a).

Debtor plainly filed this case not to reorganize a business but to stop a foreclosure. Cause exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay and allow Movant to pursue its state law remedies.

**B.** Relief is Proper Pursuant to 11 U.S.C. § 362(d)(1) for Lack of Adequate Protection.

Besides bad faith, § 362(d)(1) expressly identifies "the lack of adequate protection of an interest in property of such party in interest" as cause for relief from the automatic stay. Lack of adequate protection also bears directly on the second *Feingold* factor, "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Feingold*, 730 F.3d at 1277.

Generally, the burden of proof on adequate protection rests on the Debtor. 11 U.S.C. § 362(g) provides that "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property," while "the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g)(1)-(2). The Code does not define adequate protection, but § 361 gives three illustrations: (1) cash payments or periodic cash payments to the extent the stay results in a decrease in the value of the creditor's interest; (2) an additional or replacement lien to the same extent; or (3) other relief that results in the creditor realizing the "indubitable equivalent" of its interest in the property. 11 U.S.C. § 361(1)-(3). However, in the context of § 362(d)(1), it is movant's burden to establish a prima facie showing that its collateral is declining in value; once it does, "the burden shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization." *In re George*, 315 B.R. 624, 628–29 (Bankr. S.D. Ga. 2004) (citing *In*

*re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)). If the debtor fails to meet that burden, "the stay should be lifted." *Id.* at 629 (citation omitted).[11]

The movant's initial showing is not onerous. The movant need not prove a quantified decline in market value. A decline in the value of a creditor's interest can result from "nonpayment of property taxes having priority over the creditor's lien," and a threatened decline can arise from "lack of insurance [or] failure to maintain the collateral." *In re Big Dog II, LLC*, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019) (citation omitted). Courts therefore accept evidence that the debtor has failed to pay taxes, maintain insurance, or keep the property in repair in place of proof of falling market value. *See In re 1504 Harney Assocs., L.P.*, 1997 WL 34879445 (Bankr. D. Neb. Mar. 28, 1997); *In re Klosterman Dev. Corp.*, 2012 WL 1597179, at *2 (Bankr. N.D. Ohio May 7, 2012) (movant "lacks adequate protection in the absence of payment of the real property taxes," which "directly prime Movant's lien").

Movant's collateral is declining in value as Debtor has not paid ad valorem taxes on any of the Properties. As of the date of this Motion, $9,809.94 in 2025 taxes, interest, and penalties remains delinquent. The 2026 taxes on the Abbotts Property, $5,293.56, became delinquent on October 15, 2026, and the remaining 2026 taxes come due December 20, 2026. These taxes, plus accruing interest and penalties, prime the Deeds and reduce Movant's collateral position. Debtor also schedules no insurance of any kind, despite its covenant in each of the Deeds to keep the Properties insured with loss payable to Movant. It also appears that Debtor's principal is residing at the Tamarack Property but makes no payment to Debtor or to Movant.

---

[11] An equity cushion may protect against decline, but only if it is substantial. In *Rice*, a cushion of less than 5% was insufficient "[i]n view of the likely costs of sale and the inherent delay which will occur in marketing" the property. The court noted that cause may be found where the debtor is "not making the payments due on the real estate as they become due, failing to pay taxes and the like." *Matter of Rice*, 82 B.R. 623, 627 (Bankr. S.D. Ga. 1987). Courts generally hold cushions of 0% to 11% insufficient. *Big Dog II*, 602 B.R. at 70.

There is also no equity cushion to speak of as the Cross-Collateralized Properties secure all of Movant's claims. By Debtor's own schedules, those same properties are valued at $995,000.00, which is approximately $196,400.00 less than Movant's claims on the same, before accounting for taxes and related costs/fees. As to the Madison Property, even if the Court were to credit Debtor's valuation of $450,000.00 over its listing price of $419,000.00, an equity cushion of approximately 8% is "generally held to be insufficient[.]" *Big Dog II*, 602 B.R. at 70. Further, at 8%, such equity would be consumed by "the likely costs of sale …." *Rice*, 82 B.R. at 627.

Finally, Debtor cannot provide adequate protection in any form. With $60 in cash and no income, Debtor cannot make periodic payments under 11 U.S.C. § 361(1). Debtor's listed assets are already encumbered by Movant's liens. The only arguable exception, Tract B of the Hwy 83 Property (see fn.2), is subject to Movant's reformation claim and, at a county value of $64,900.00, could not cover a shortfall of $196,400.00 even on Debtor's own values. Debtor therefore has nothing to offer as a replacement lien under § 361(2). And Debtor has proposed nothing that could constitute the indubitable equivalent of Movant's interest under § 361(3). Movant maintains that there is no such equivalent. For these reasons, the Court should grant Movant's request and lift the automatic stay.

**C.** Relief is Proper Pursuant to 11 U.S.C. § 362(d)(2).

11 U.S.C. § 362(d)(2) provides that the court "shall grant relief from the stay … with respect to a stay of an act against property … if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(A)-(B). Both elements must exist before relief may be granted. *George*, 315 B.R. at 627. "Once a movant under this section establishes that the debtor has no equity in the collateral, it is

the burden of the debtor to establish that it is necessary to an effective reorganization." *Orchard Hills*, 608 B.R. at 321-22.

Whether the debtor has equity "involves consideration of two issues, the amount of the secured indebtedness held by [the movant] and the value of the collateral pledged to secure it." *In re Standard Bldg. Associates, Ltd.*, 85 B.R. 644, 646 (Bankr. N.D. Ga. 1988). In determining value, the court may rely on the debtor's own schedules. *George*, 315 B.R. at 627 ("The Debtor swore under penalty of perjury that the vehicle is worth $2,500.00. This statement of value constitutes a judicial admission …. Therefore, according to Debtor's Schedule D, Debtor has no equity in the vehicle."). As for debtor's burden, the U.S. Supreme Court explained:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts … have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." (citation omitted).

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988).

Debtor has no equity in the Properties. On Debtor's own sworn values, the Cross-Collateralized Properties are worth $995,000.00. They secure Movant's claims of $1,191,383.41 on the relevant notes and $1,604,549.06 in total under their all-indebtedness provisions, before any priming taxes. Debtor therefore concedes it has no equity in those Properties. As to the Madison Property, although Debtor's schedules list the same as having a value of $450,000.00, which, admittedly, is more than Movant's claim of $413,165.65, it is also true that two months before the Petition Date, Debtor's principal offered it for $379,000.00, and that even at its current $419,000.00 asking price, a 6% sales commission alone would leave net proceeds of $393,860.00.

On either measure, Movant's claim exceeds what the property would realize for creditors, before sale costs and priming taxes.

Having established Debtor's lack of equity in the Properties, the burden shifts to Debtor to show that the same are necessary for an effective reorganization "that is in prospect." *Timbers*, 484 U.S. at 375-76. Debtor cannot satisfy this burden as it has no business, no revenue, concedes that no funds will be available to pay unsecured creditors, identified no source of new money, no buyer, and no financing. Indeed, a debtor with $60 and no income cannot fund a plan that pays a secured creditor holding $1.6 million in claims. As there is nothing to reorganize, no reorganization is "in prospect." *See In re Darlington*, 2009 WL 6498171, at *5 (granting relief where "there is no equity in the Property" and "the Debtor has no reasonable prospect of reorganization."); *see also Orchard Hills*, 608 B.R. at 322 (granting relief where "it is undisputed that Debtor owes $2,747,936 to SBN[,] [c]onsequently, as the Debtor has no equity in the Property, SBN has satisfied its burden pursuant to § 362(d)(2) …. [and] Debtor has failed to satisfy its burden …. SBN is entitled to relief…."). For these reasons, lifting the automatic stay and allowing Movant to pursue its state law remedies with respect to the Properties is appropriate.

**D.** Reservation of Right to Pursue Relief Under 11 U.S.C. § 362(d)(4).

11 U.S.C. § 362(d)(4) requires the court to grant relief "with respect to a stay of an act against real property … by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either – (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(A)-(B). An order entered

under this section, once recorded, binds any case purporting to affect the property that is filed within two (2) years. *Id.*; *see also In re Evans*, 665 B.R. 670, 685 (Bankr. N.D. Ga. 2024).

Debtor filed this case the day before Movant's scheduled foreclosure sales, and its principal resides in one of the Properties. Movant is investigating whether any interest in the Properties has been transferred without its consent, and whether any other bankruptcy filing has affected the Properties. Movant expressly reserves the right to seek relief under § 362(d)(4), whether by supplement to this Motion or by separate motion, if that investigation, discovery in this case, or any subsequent transfer or filing establishes the necessary grounds.

## CONCLUSION

**WHEREFORE**, Movant respectfully requests that the Court enter an Order (a) granting Movant and Apex Fund Group, to the extent the latter holds record title to the Hwy 83 Deed, relief to exercise their rights and remedies under applicable non-bankruptcy law with respect to the Properties; (b) confirming that the automatic stay does not apply to the recording of the Assignment and Transfer of Security Deed attached to this Motion as Exhibit D-1 or, alternatively, to the extent the automatic stay applies, granting Movant relief from the stay to record it; (c) waiving the provisions of Bankruptcy Rule 4001(a)(3); and (d) for such other and further relief as is just and equitable.

Respectfully submitted this 13th day of November, 2026.

**POOLE HUFFMAN, LLC**
*Attorneys for Apex Debt Fund I, LP*

By: Andy T. Nguyen
Andy T. Nguyen
GA Bar No. 729256

1990 Lakeside Pkwy
Suite 300
Tucker, GA 30084
(P): 404.373.4008
andy@poolehuffman.com